DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which granted the motion for summary judgment filed by appellee, Timothy Vandevander, against appellant, State Automobile Insurance Company ("State Auto"), and denied State Auto's motion for summary judgment filed against appellee. State Auto raises the following as its sole assignment of error:
 {¶ 2} "The trial court erred in granting appellee's Motion for Summary Judgment and in overruling appellant's Motion for Summary Judgment based on its finding that appellee is an `insured' under appellant's business auto policy."
 {¶ 3} For the reasons that follow, we reverse the decision of the trial court and enter judgment in favor of State Auto.
 {¶ 4} The pertinent facts are as follows. On February 4, 2000, appellee and his fiancé borrowed appellee's brother's van because appellee's fiancé's vehicle was out-of-service.[1]
While appellee's fiancé was driving the van, it broke down on the side of the road. After finishing his shift at the Butt Hut, appellee went to the location of the broken-down van. While standing next to the van, holding the driver's side door open and looking into the van, appellee was struck by a passing vehicle.
 {¶ 5} Appellee was employed by DWT, Inc., dba Butt Hut of America. DWT was insured by State Auto at the time of appellee's injury. Appellee filed this declaratory judgment action against State Auto on July 20, 2001, asserting an underinsured motorist ("UM") claim against DWT's policy with State Auto.
 {¶ 6} State Auto's Business Auto Coverage Form provides that, throughout the policy, "the words `you' and `your' refer to the Named Insured shown in the Declarations." DWT is the only named insured in the declarations. The UM coverage at issue in State Auto's policy is set forth as follows:
 {¶ 7} "A. COVERAGE
 {¶ 8} We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or operator of:
 {¶ 9} An `uninsured motor vehicle' as defined in paragraphs F.3.a., b. and c. because of `bodily injury':
 {¶ 10} Sustained by the `insured'; and
 {¶ 11} Caused by an `accident'.
 {¶ 12} An `uninsured motor vehicle' as defined in Paragraph F.3.d. because of `bodily injury' sustained by an `insured'. * * *
 {¶ 13} "B. WHO IS AN INSURED
 {¶ 14} You, if a natural person, and any `family member'. If you includes a natural person or group of natural persons engaged in or functioning as a `business organization', it is understood and agreed that a `business organization' has no `family members', and no coverage is available for natural persons, except as otherwise set forth in Section B.2. and B.3. Who Is An Insured, of this form. For the purpose of this section, `business organization' means any entity or association recognized under the Ohio Revised Code or otherwise acknowledged under common law or the statutory law of any other state, province or country, other than a sole proprietorship.
 {¶ 15} Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'. The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 16} Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another `insured'."
 {¶ 17} "Covered Autos," pursuant to the uninsured motorists coverage, include the following:
 {¶ 18} "OWNED `AUTOS' ONLY. Only those `autos' you own * * *. This includes those `autos' you acquire ownership of after the policy begins. * * *
 {¶ 19} "HIRED `AUTOS' ONLY. Only those `autos' you lease, hire, rent or borrow. This does not include any `auto' you lease, hire, rent or borrow from any of your employees or partners or members of their households. * * *
 {¶ 20} "NONOWNED `AUTOS' ONLY. Only those `autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes `autos' owned by your employees or partners or members of their households but only while used in your business or your personal affairs."
 {¶ 21} Based on the foregoing policy language, which states that "you" are an insured, and the rationale in Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, the trial court found that appellee was an insured for purposes of UM coverage. Alternatively, the trial court held that even if appellee was not an insured under section B.1., he was an insured under section B.2. because he was "occupying" a "covered auto" at the time he was injured.
 {¶ 22} Since the trial court's decision, the Ohio Supreme Court in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, has limited the application of Scott-Pontzer.Galatis states that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Id. at paragraph two of the syllabus.
 {¶ 23} In this case, the policy states that "you" are an insured for purposes of UM coverage. "You" refers only to the named insured, i.e., DWT, the corporation. Assuming arguendo that "you" would include employees of DWT, because appellee was not injured within the course and scope of his employment, he is not an insured under the policy. See Id.
 {¶ 24} Nevertheless, appellee argues that he qualifies for UM coverage pursuant to section B.2. of the UM policy, which states that UM coverage is provided to "[a]nyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'." Appellee argues that, due to an ambiguity in the policy, the van he borrowed from his brother qualifies as a "covered auto," specifically, a "nonowned auto."
 {¶ 25} A "nonowned auto" is defined, in part, as those "`autos' owned by your employees or partners or members of their households but only while used in your business or your personal affairs." Appellee argues that since a corporation is the only named insured, and because a corporation cannot have "personal affairs," the word "your" is ambiguous and should be construed to include DWT's employees. Based on appellee's construction, the definition of "nonowned auto" would read, in pertinent part, "`autos' owned by your employees or partners or members of their households but only while used in [DWT's] business or [DWT's employees'] personal affairs." Appellee argues that pursuant to this construction, the van would be a "covered auto" because it was a temporary substitute for a vehicle owned by a member of appellee's household and was being used in appellee's personal affairs at the time of his injury. We disagree with this analysis.
 {¶ 26} It is well-settled that when determining contractual interpretation issues, a court must examine the insurance contract as a whole, look to the plain and ordinary meaning of the language used in the policy, and give effect to the intent of the parties to the agreement. Galatis at ¶ 11, citing HamiltonIns. Serv. Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273; Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus; and Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. Where a contract is ambiguous, a court is "not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties." Galatis at ¶ 12, citing Shifrin v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635.
 {¶ 27} "However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Galatis at ¶ 13, citingCent. Realty Co. v. Clutter (1980), 62 Ohio St.2d 411, 413.
 {¶ 28} Because an insurance company customarily drafts its policies, "an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." Id., citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. Galatis however, noted that a claimant in a lawsuit who is seeking coverage is not necessarily an insured.Galatis at ¶ 34. As such, when determining whether a claimant is an insured under a policy, ambiguities are to be construed in favor of the policyholder, not the claimant. Id. at ¶ 35, citing Cook v. Kozell (1964), 176 Ohio St. 332. Thus, "[w]hile an ambiguity is construed in favor of one who has been determined to be insured, an ambiguity in the preliminary question of whether a claimant is insured is construed in favor of the policyholder." Galatis at ¶ 35.
 {¶ 29} This rule of construction is based on the premise that a person who is not a party to the contract is not in a position to urge that the contract be strictly construed against the other party. Id. at ¶ 14, citing Cook at 336. Galatis noted that this rule "rings especially true where expanding coverage beyond a policyholder's needs [would] increase the policyholder's premiums." Id.
 {¶ 30} When construing a policy in favor of the policyholder,Galatis noted that "[t]he purpose of a commercial auto policy is to protect the policyholder." Id. at ¶ 37, citing King,
supra. With this purpose in mind, the Ohio Supreme Court held that "[p]roviding uninsured motorist coverage to employees who are not at work or, for that matter, to every employee's family members is detrimental to the policyholder's interests."Galatis at ¶ 37, citing Cook at 336.
 {¶ 31} In Robart v. Horvath, Wayne App. No. 01CA0031, 2002-Ohio-454, pursuant to the identical policy language concerning "covered autos" at issue in this case, the Ninth District Court of Appeals awarded UM coverage to a similarly situated claimant, i.e., an employee of the corporate policyholder who was injured in a vehicle, which was not owned by the corporation and, at the time of the injury, was not being used in connection with the corporate insured's business. The Ninth District held that, by applying the plain, ordinary, natural or commonly accepted meaning of the words, "your personal affairs," the policy language was ambiguous where "your" referred to a corporation. Robart, supra. Having found the language to be ambiguous, the court in Robart construed the policy in favor of the claimant and awarded her UM coverage pursuant to the policy.
 {¶ 32} We agree that the phrase "your personal affairs" is ambiguous when applied to a corporate entity;[2] however, we find that the rationale in Robart, which was decided afterScott-Pontzer, but before Galatis, is incorrect.Scott-Pontzer was criticized and, in part, overruled byGalatis because, in deciding the coverage issues in that case,Scott-Pontzer "ignored the intent of the parties to the contract" and "construed the contract in favor of neither party to the contract, preferring instead to favor an unintended third party [an employee who was injured while not at work]." Galatis
at ¶ 39. Akin to the erroneous analysis of contract construction applied in Scott-Pontzer, we find that the court in Robart
also failed to consider the intent of the contracting parties and construed the ambiguity in the policy in favor of an unintended third party, i.e., a non-working employee, rather than in favor of the policyholder.
 {¶ 33} As discussed above, any ambiguity in the policy must be construed in favor of the policyholder, i.e. the corporate insured. See Galatis at ¶ 35. Additionally, even though the definition of "nonowned auto" contains an ambiguous phrase, it should not be construed so as to provide an unreasonable interpretation of the words of the policy. See Id. at ¶ 14, citing Morfoot v. Stake (1963), 174 Ohio St. 506, paragraph one of the syllabus.
 {¶ 34} Galatis clearly states that "[p]roviding uninsured motorist coverage to employees who are not at work * * * is detrimental to the policyholder's interests." Galatis at ¶ 37. Following this reasoning and construing the ambiguity in this case in favor of DWT, the policyholder, we find that the van was not a "covered auto" when appellee received his injuries because it was not being used in DWT's business affairs, but rather by appellee in his personal affairs. Additionally, in viewing the policy as a whole, we find that the parties clearly did not intend to extend coverage to employees who were injured while occupying vehicles that were neither owned by the corporation, nor being used in connection with the corporation's affairs. Twice, the definition of "nonowned autos" states that, to be a covered vehicle, the vehicle must be used in connection with DWT's business.
 {¶ 35} Accordingly, we find that appellee is not entitled to UM coverage pursuant to State Auto's policy with DWT because he was not an insured and the van in question was not a "covered auto." For this court to find otherwise would result in a strained construction of the policy language and frustrate the intention of the contracting parties. Appellant's sole assignment of error is therefore found well-taken.
 {¶ 36} Based on the foregoing, we find that there are no genuine issues of material fact and that reasonable minds can only conclude that State Auto is entitled to judgment as a matter of law. See Civ.R. 56(C). The decision of the trial court, which granted summary judgment in favor of appellee, is reversed. In accordance with App.R. 12(B), we hereby enter judgment in favor appellant, State Automobile Insurance Company, on its motion for summary judgment against appellee, Timothy Vandevander. Appellee is ordered to pay the costs of this appeal.
 {¶ 37} Insofar as we find our decision to be in conflict with the Ninth District Court of Appeals decision in Robart v.Horvath, Wayne App. No. 01CA0031, 2002-Ohio-454, pursuant to Section 3(B)(4), Article IV, Ohio Constitution, this court certifies the record of the instant case to the Ohio Supreme Court for review and final determination on the following question:
When a corporation is the only named insured, does the ambiguous phrase, "your personal affairs," as applied to a corporation, act to provide uninsured motorist coverage to an employee of a corporation who was injured in a vehicle which, at the time, was not owned by the corporation and was not being used in connection with the corporate insured's business?
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Lanzinger, J., Singer, J., Concur.
[1] Appellee's fiancé lived with him at the time of the accident, but appellee's brother did not.
[2] {¶ a} Clearly, as a business entity, a corporation cannot have "personal affairs," because any of it "affairs" would be business related.
{¶ b} As this court again faces an issue of ambiguous terms in a policy of insurance written for a corporation, it is perplexed that the insurance industry has not yet implemented a procedure to eliminate references to individual persons in business policies, where a corporation is the only named insured. The amount of judicial resources devoured by having to resolve issues created by insurance companies' unclear wording in these types of commercial business policies is staggering and, in this court's opinion, unnecessary.